## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

NEW WEST MICHIGAN III
INDUSTRIAL INVESTORS, L.L.C.
a Michigan limited liability company,

     Plaintiff,

v.

AMAZON.COM SERVICES LLC,

     Defendant.

———————————————————/

Case No.:

**HON.**


**COMPLAINT AND JURY DEMAND**

VARNUM LLP
Mark E. Hills (P47524)
Bryan R. Walters (P58050)
P.O Box 352
Grand Rapids, MI 49503
616/336-6000
mehills@varnumlaw.com
brwalters@varnumlaw.com

———————————————————/

     Plaintiff, New West Michigan III Industrial Investors, L.L.C. ("NWM"), by and through

its attorneys, VARNUM LLP, hereby states its Complaint against Defendant Amazon.com

Services LLC ("Amazon") (collectively, "the Parties"), as follows:

### SUMMARY OF THE CASE

     1.    This is a $10,000,000+ breach of contract and tort case arising out of Amazon's

demolition of nearly half of the infrastructure of a 908,745 square foot building owned by NWM

in Grand Rapids, Michigan. On October 25, 2019, the Parties entered into negotiations for

Amazon to lease the building from NWM for use as a regional distribution center for West

Michigan. The Parties agreed that, during lease negotiations, Amazon would have access to the building to conduct pre-lease due diligence and non-invasive pre-construction activity on the building, executing an Access Agreement to memorialize Amazon's limited rights during the pre-lease period.

However, in anticipation that a lease agreement with NWM was imminent, Amazon "got out ahead of its skis" and started doing <u>massive</u> demolition work on the infrastructure of the building and premises <u>prior to entering into a lease</u>. This demolition work did not improve the building – rather, it stripped away much of the basic infrastructure of the building as part of Amazon's plan to reconfigure the building to suit its unique needs. Preliminary estimates are that it may cost upwards of $10,000,000 to restore the building after Amazon's demolition efforts.

Amazon has since walked away from lease negotiations and terminated the Access Agreement, claiming that Amazon's anticipated costs to renovate the building to meet its unique needs were more than twice what Amazon had budgeted, such that the project was no longer economically viable to Amazon.

As required by the Access Agreement, NWM provided Amazon notice that Amazon had 15 days to restore the property "to a condition no worse than its condition as of the effective date of the Agreement," and that Amazon's failure to do so would constitute a material breach of the Access Agreement. The 15-day cure period has come and gone with no action whatsoever by Amazon, thus necessitating this lawsuit.

## PARTIES, JURISDICTION, AND VENUE

2.     New West Michigan III Industrial Investors, L.L.C., ("NWM") is a Michigan limited liability company with a registered address of 39400 Woodward Avenue, Suite 250, Bloomfield Hills, Oakland County, Michigan.

3.     C. Michael Kojaian and Anthony Antone are the beneficial owners of NWM.

4.     NWM and its affiliated entities are collectively the largest owner of warehouse facilities in West Michigan and have maintained a constant presence in West Michigan for more than twenty (20) years.

5.     Amazon.com Services LLC  is a Delaware limited liability company with a Michigan registered address of 601 Abbott Road, East Lansing, Ingham County, Michigan, and principal place of business located at 410 Terry Avenue North, Seattle, King County, Washington.

6.     Upon information and belief, Amazon is a subsidiary of Amazon.com, Inc., an American multinational conglomerate technology company that focuses on e-commerce, cloud computing, digital streaming and artificial intelligence.

7.     The amount in controversy exceeds $75,000, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, and Defendant is subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

9.     NWM owns a warehousing facility located at 3951 Trade Drive, SE, Grand Rapids, Michigan (the "Property").

10.    The Property is a two-story building comprising 908,745 square feet and related parking facilities.

11.    The Property is located within the Grand Rapids Commerce Center Association (the "Association"), located east of Eastern Avenue, between 36th Street and 44th Street in Grand Rapids, Michigan.

12.    The Property is subject to the Association's covenants, conditions and restrictions.

### Amazon Approaches NWM About Leasing The Building

13.    On October 25, 2019, NWM was contacted by Grand Rapids real estate broker John Kuiper with a request for proposal (the "RFP") for ████████████████████████ ████████████████ (Black text redacted)

14.    The RFP proposed, among other terms, ████████████████████████ ████████████████████████████████████████ (Black text redacted)

15.    Mr. Kuiper informed NWM that it would be required to sign a Non-Disclosure Agreement to protect the identity of the potential tenant.

16.    The NDA and related communications identified the potential tenant as Amazon.

17.    Prior to the October 25, 2019, inquiry from Amazon, NWM had evaluated the Property and determined that its marketability could be maximized by construction of a ramp that permitted motor vehicles to move between the 1st and 2nd floors.

18.    Therefore, NWM hired an engineer to prepare conceptual drawings and preliminary pricing for construction of a vehicle ramp between the 1st and 2nd floors of the Property.

19.     On November 14, 2019, NWM provided to Amazon all of the due diligence documents and information it acquired when it purchased the Property in August, 2019.

20.     When Amazon's representatives toured the Property on November 19, 2019, they requested the CAD drawings for the conceptual design of the internal vehicle ramp which were provided to them, along with a survey, later that same day.

21.     Thereafter, Amazon representatives were present at the Property on at least a weekly, and often daily, basis.

22.     On November 22, 2019, Amazon completed a Phase I environmental assessment of the Property.

23.     In its November 25, 2019, response to the RFP, NWM proposed that Amazon consider ████████████████████████████████████████████ ████████████████████████████████ (Black text redacted)

24.     On November 29, 2019, Amazon responded with a proposal based on ██████ ████████████████████████████████████████████████████ ████████████████ (Black text redacted)

## NWM And Amazon Negotiate The Economic Terms Of A Lease Of The Entire Property

25.     Beginning on December 2, 2019, and continuing thereafter, the Parties negotiated for Amazon's lease of ████████████████ (Black text redacted)

26.     On December 3, 2019, NWM responded to Amazon with a proposal based on ████ ████████████████████████████████████████████████████ (Black text redacted)

27.     On December 11, 2019, Amazon responded to NWM with a proposal based on a ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ (Black text redacted)

28.      NWM responded on December 12, 2019, with a proposal based on a ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ (Black text redacted)

29.      On December 17, 2019, Amazon's broker confirmed Amazon's agreement to ██

████████ (Black text redacted)

30.      On December 20, 2019, NWM sent its form lease agreement to Amazon per the request of Amazon's broker.

31.      During December 2019, Amazon requested a baseline environmental assessment and also began a property condition assessment.

**NWM and Amazon Sign An Access Agreement Allowing For Limited Due Diligence
Activities By Amazon Prior To Signing A Lease**

32.      Effective January 3, 2020, NWM and Amazon entered into an Access Agreement (the "Agreement") to give Amazon access to the Property in order to determine if the Property would meet Amazon's needs as a distribution center for West Michigan. A copy of the Agreement is attached at **Tab 1**.

33.      Under the Agreement, Amazon was given access to the Property "for the purpose of conducting due diligence and non-invasive pre-construction activity", including certain enumerated actions defined by the Agreement as "permitted actions." (**Tab 1**, ¶ 2) (emphasis added).

34.     The Agreement also required that, if the parties did not enter into a lease, Amazon must return the Property "to a condition no worse than its condition as of the effective date of the Agreement." (**Tab 1, ¶ 3**).

**Amazon Continues To Access The Property To Conduct
Limited Pre-Lease Due Diligence**

35.     On January 10, 2020, Amazon's broker informed NWM that Amazon would require the use of its own lease agreement form.

36.     The growing presence of Amazon's representatives at the Property began to interfere with an existing tenant's quiet use and enjoyment of its leased space at the Property.

37.     Indeed, Amazon's due diligence efforts caused damage to the business operations of NWM's tenant.

38.     Therefore, in February 2020, NWM terminated the lease of the existing tenant and voluntarily paid that tenant $20,387 to mitigate the damage caused by Amazon.

**Extensive Negotiations On The Terms Of The Written Lease Agreement
Begin In January**

39.     Lease negotiations between the Parties' counsel began on January 14, 2020, when Amazon provided a draft lease to NWM to review, based on ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ (Black text redacted)

40.     NWM's counsel provided a proposed revised lease to Amazon's counsel on January 21, 2020.

41.     The Parties' counsel conferred by telephone regarding NWM's proposed lease revisions on January 24, 2020.

42.     Amazon provided a revised lease for review by NWM on February 10, 2020, which NWM revised and returned to Amazon for consideration by Amazon on February 14, 2020, ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████ (Black text redacted)

### **Amazon Applies For A Demolition Permit In February**

43.     On February 20, 2020, Amazon (through its agent) applied to the City of Grand Rapids for a  building permit for "selective demolition" for the Property (the "Demolition Permit"), a summary of which from the City of Grand Rapids is attached at **Tab 2**.

44.     The Demolition Permit was ready for the City of Grand Rapids to issue to Amazon on February 25, 2020.

### **The Parties Continue Lease Negotiations Into March**

45.     Amazon provided another revised lease for consideration by NWM on February 27, 2020, which included ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ (Black text redacted)

46.     NWM revised the proposed lease from Amazon to address ██████████████████

████████████████████████████████████, which was sent to Amazon's counsel on March 6, 2020. The revisions included ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████ (Black text redacted)

47.     On March 11, 2020, the Parties' counsel conferred by telephone regarding the lease revisions proposed by NWM, and covenants, conditions and restrictions and association issues regarding the lease.

48.     Further, on March 10 and 11, 2020, NWM paid $40,200 to complete certain asbestos abatement to the Property required by Amazon.

49.     The asbestos abatement was completed by NWM without charging it against tenant improvements as a sign of NWM's good faith.

### Amazon Applies For Renovation And Land Use Permits In March

50.     Amazon (through its agent) also applied to the City of Grand Rapids for a building permit for renovation of the Property (the "Renovation Permit") on March 11, 2020, a summary of which from the City of Grand Rapids is attached at **Tab 3**.

51.     On March 12, 2020, Amazon (through its agent) applied to the City of Grand Rapids for a land use permit for the Property (the "Land Use Permit"), a summary of which from the City of Grand Rapids is attached at **Tab 4**.

### Amazon And NWM Continue Lease Negotiation Through The End Of March

52.     An additional telephone conference between the parties counsel regarding NWM's proposed lease revisions occurred on March 12, 2020.

53.     On March 17, 2020, the Parties' counsel had another telephone conference during which they discussed ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████ (Black text redacted)

54.     A similar telephone call occurred between the Parties' counsel on March 20, 2020, which included discussion of ███████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████ (Black text redacted)

55.    On March 21, 2020, Amazon's counsel provided ████████████████ ████████████████ (Black text redacted)

56.    NWM revised ████████████ proposed by Amazon and returned it to Amazon's counsel on March 23, 2020. (Black text redacted)

57.    NWM prepared and provided a new draft lease to Amazon on March 24, 2020, that reflected agreements regarding the maintenance and repair of the roof, parking lot and other aspects of the Property during the lease term.

58.    Amazon responded on March 29, 2020, with a revised lease document.

**Amazon Continues Lease Negotiations And Begins Sending Contractors To The Property In Anticipation Of Finalizing A Lease Agreement**

59.    Amazon's contractors (general, electrical, mechanical, plumbing, fire protection, and roofing) began to appear on the Property on March 30, 2020.

60.    On March 30, 2020, the Parties' counsel conferred by telephone regarding the draft lease and NWM's desire to have the lease finalized and executed as soon as possible.

61.    That call was followed on March 31, 2020, with NWM presenting a draft work letter to Amazon that addressed ████████████████████████ ████████████████ (Black text redacted)

62.    On April 2, 2020, the Parties' counsel conferred regarding the latest draft lease.

63.    Amazon provided additional revisions to the language proposed in the lease to address the covenants, conditions and restrictions of the Association on April 7, 2020.

64.    NWM responded with an additional proposed lease on April 8, 2020.

65.    On April 9, 2020, the Parties' counsel again conferred by telephone regarding ████████████████████████████████████████████████████

(Black text redacted)

10

66.     NWM proposed revised terms on April 10, 2020, and the Parties' counsel exchanged ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (Black text redacted)

67.     On the same day, the Parties' counsel conferred telephonically regarding the timing of the tenant improvement allowance, estoppel documents, subordination, non-disclosure and attornment agreement, and the exhibits to the lease.

68.     Another telephone call between the Parties' counsel regarding ███████████ ████████████████████████████████████████ occurred on April 13, 2020. (Black text redacted)

69.     NWM prepared and sent a final version of the lease, including ███████████ ████████████████████████████████████████████████████████ to Amazon's counsel on April 15, 2020, along with a signature version of ███████████████████ ██████████████████████ (Black text redacted)

**Amazon's Permits Are Conditionally Approved**

70.     On April 17, 2020, the City of Grand Rapids issued the Demolition Permit to Amazon.

71.     On April 20, 2020, the City of Grand Rapids conditionally approved the Renovation Permit for Amazon.

72.     On April 20, 2020, the City of Grand Rapids also notified Amazon that the Land Use Permit was ready to be issued once an Amazon representative signed and returned it to the City.

73.     Upon information and belief, Amazon never signed and returned the Land Use Permit to the City of Grand Rapids.

74.     On April 22, 2020, Amazon submitted a revision to the Renovation Permit application to the City of Grand Rapids.

75.     On April 27, 2020, the City of Grand Rapids approved issuing the Renovation Permit to Amazon.

### Amazon Abruptly Pulls Its Contractors From The Property and NWM Assesses The Massive Amount Of Demolition Done By Amazon

76.     On April 23, 2020, NWM's property manager was informed by an Amazon subcontractor that it had been told to stop work on the Property.

77.     By April 24, 2020, when Amazon's contractors began to demobilize and leave the Property, they had demolished as much as forty-five (45) percent of the Property's infrastructure, including, but not limited to:

    a.    Cutting or disconnecting the main gas supply line in multiple locations leaving the property without heating or cooling, thereby creating the threat of additional damage to the building and to the health, safety and welfare of the occupants thereof;

    b.    Cutting or disconnecting the fire protection supply cut in multiple locations leaving the Property: (i) in violation of applicable state and local codes and regulations and subject to nuisance claims by the City of Grand Rapids, and (ii) in a condition that risks the health, safety and welfare of any occupants thereof;

    c.    Completing demolition of three (3) men's/women's bathroom suites, leaving with Property with insufficient sanitary service and therefore: (i) in violation of applicable state and local codes and regulations and subject to nuisance claims by the City of Grand Rapids, and (ii) in a condition that risks the health, safety and welfare of any occupants thereof;

    d.    Completing demolition of two (2) interior office spaces, each approximately 8,000 square feet;

    e.    Completing demolition of a paint room of approximately 1,300 square feet;

    f.    Completing demolition of a clean room suite of approximately 25,000 square feet;

g.   Removing and disposing of 7 large HVAC units without repair to the building penetrations, leaving the Property without heating or cooling, thereby creating the threat of additional damage to the Property, and to the health, safety and welfare of the occupants thereof;

h.   Demolishing interior concrete masonry units ("CMU") walls in the two-story internal atrium, causing repeated penetrations of the roof and likely voiding the remaining 17-year roof warranty;

i.   Removing and disposing of all 2nd floor perimeter windows and ineffectively replacing them with plywood which permit intrusion of the elements into the Property, causing additional damage therein and putting the health, safety and welfare of the building's occupants in jeopardy;

j.   Causing exterior siding damage;

k.   Parking lot damage;

l.   Removing and disposing of the majority of light fixtures from 2nd floor;

m.   Disconnecting or removing electrical bus ducts throughout the building;

n.   Removing and disposing of the smoke curtain from many areas of the Property;

o.   Demolishing the NW freight elevator and creating penetrations of the roof over the elevator;

p.   Removing and disposing of Cambridge warehouse heaters, leaving the Property without heating or cooling, thereby creating the threat of additional damage to the Property, and to the health, safety and welfare of the occupants thereof; and

q.   Removing 2nd floor piping and conduit, leaving at least one-half of the Property without necessary and appropriate water or electrical service.

78.   Amazon's demolition work compromised the structural integrity of the Property, thereby placing the health, safety and welfare of its occupants at risk.

### Amazon Tells NWM It Has Pulled Its Contractors Because Amazon Determined The Building Renovation Would Cost Much More Than Amazon Had Anticipated

79.   On April 28, 2020, NWM's representative, Tony Antone, had a telephone call with Amazon's representative, Stacy Reid.

80.   During the April 28th telephone conference, Ms. Reid told Mr. Antone that Amazon's anticipated construction costs to renovate the Property were more than twice what Amazon expected.

81. During the April 28th telephone conference, Ms. Reid also told Mr. Antone that Amazon's anticipated construction costs were between three and four times the amount of tenant improvements contemplated during negotiations between the parties.

82. Indeed, Ms. Reid told Mr. Antone that "[Amazon] got ahead of our skis" regarding the demolition work completed at the Property by Amazon prior to a Lease Agreement being signed.

83. Further, Ms. Reid told Mr. Antone that she had never terminated an access agreement and would "have to figure out how to do that."

84. Lastly, Ms. Reid told Mr. Antone that the only "path forward" would be for Amazon to buy the Property from NWM but Amazon never proposed a dollar amount for such a purchase nor did Amazon present a written offer to purchase to NWM.

## Amazon Walks Away From Lease Negotiations And Terminates The Access Agreement

85. On May 1, 2020, Amazon sent written notice of its termination of the Agreement to NWM. *See* **Tab 5**.

86. Upon information and belief, Amazon withdrew the Renovation Permit application from the City of Grand Rapids on or about May 4, 2020.

87. Between March 30, 2020, and April 24, 2020, Amazon's contractors completed significant work that was not identified as "permitted action" under the Agreement.

88. Indeed, Amazon's contractors went far beyond "due diligence and non-invasive pre-construction activity" in the scope of their work and executed almost one-half of a specific demolition plan for the Property.

89. After Amazon's contractors began work in the Property on March 30, 2020, Amazon's representatives repeatedly represented to NWM that execution of a lease for the

14

Property would occur "within a few days" while Amazon continued to negotiate with Steelcase to resolve a restrictive covenant applicable to the Property, and with Ashley Capital, the Association's manager, for approval of certain exterior modifications to the Property desired by Amazon.

90.     As of April 15, 2020, NWM understood it had a final lease agreement worked out with Amazon, subject only to Amazon completing its agreements with Steelcase and Ashley Capital.

91.     While NWM was aware that the work being completed in the Property by Amazon's contractors exceeded the scope of the Agreement's "permitted actions," NWM did not object for three reasons: (a) NWM relied on the representations of Amazon's representatives regarding the imminent execution of a lease for Amazon to occupy the Property, (b) NWM knew that the Agreement required Amazon to return the Property "to a condition no worse than its condition as of the effective date of the Agreement" in the event a lease was not executed. (**Tab 1**, ¶ 3); and (c) NWM was accustomed to how quickly Amazon typically moved forward in real estate matters from a recent transaction between Amazon and one of NWM's affiliated entities.

92.     Amazon's unauthorized demolition work left the exterior of the Property in deplorable condition the effect of which created violations of the applicable Association covenants, conditions and restrictions.

93.     Amazon's unauthorized demolition work left the entirety of the Property in deplorable condition the effect of which likely violates NWM's financing agreements for the Property.

94.     Amazon's unauthorized demolition work interrupted essential services for the Property the effect of which likely violates applicable state and municipal ordinances, codes and regulations.

95.     Amazon's unauthorized demolition work interrupted essential services for the Property the effect of which likely places violates the provisions of the policies of insurance that apply to the Property.

96.     As a direct result of Amazon's unauthorized demolition work, NWM is unable to use or derive income from the Property but remains obligated to pay monthly debt service, insurance, utility, common area maintenance and other charges associated with the Property.

**Amazon Fails To Restore The Property "To A Condition No Worse Than Its Condition As Of The Effective Date Of The [Access] Agreement" Within The 15-day Cure Period**

97.     On May 4, 2020, in an effort to address remediation of Amazon's demolition work, Tony Antone sent an e-mail to Stacy Reid at Amazon (also copied to Amazon's outside counsel) which included a dropbox link to a series of video clips that demonstrated the disastrous condition of the Property as a result of Amazon's activities thereon. *See* **Tab 6**.

98.     On May 12, 2020, Mr. Antone sent Ms. Reid another e-mail (also copied to Amazon's outside counsel) providing a copy of a well-respected Grand Rapids commercial contractor's initial assessment of $9,425,500 to repair the damage caused by Amazon's unauthorized demolition work at the Property. *See* **Tab 7**.

99.     Based on the circumstances alleged in the foregoing paragraphs, and in compliance with the specific requirements of the Agreement, NWM's counsel sent Amazon a May 20, 2020, written notice of Amazon's breach of the Agreement. ***See* Tab 8**.

100.     As a result of NWM's written notice to Amazon of its breach of the Agreement, Amazon was required to cure its default within fifteen (15) days, or by June 4, 2020.

101.    Despite the plain requirements of the Agreement, Amazon has made no effort to cure its significant breaches of the Agreement as stated in the foregoing paragraphs.

## COUNT I – BREACH OF CONTRACT

102.    NWM incorporates by reference the allegations contained in paragraphs 1 – 101 as if fully restated herein.

103.    As alleged in the foregoing paragraphs, NWM and Amazon were parties to the Agreement.

104.    NWM timely fulfilled all of its obligations under the Agreement.

105.    As alleged in the preceding paragraphs, Amazon failed to fulfill its obligations under the Agreement by making significant physical modification to the Property and refusing to return the Property to a condition no worse than its condition as of the effective date of the Agreement.

106.    Amazon's conduct as alleged herein constitutes a breach of the Agreement.

107.    Despite NWM providing written notice of the breach of the Agreement to Amazon and the passage of the 15-day time period for Amazon to cure the breach, as required by the Agreement, Amazon has made no effort to cure the breach.

108.    As a direct and proximate result of Amazon's breach of the Agreement, NWM has sustained damages which are currently believed to be approximately $10,000,000.

WHEREFORE, Plaintiff, New West Michigan III Industrial Investors, L.L.C., respectfully requests this Honorable Court will enter judgment in its favor against Defendant Amazon.com Services LLC in whatever amount in excess of $75,000.00 Plaintiff is entitled to receive, together with interest, costs, attorneys' fees and any other relief to which Plaintiff is equitably entitled.

## COUNT II – NEGLIGENCE

109.    NWM incorporates by reference the allegations contained in paragraphs 1 – 108 as if fully restated herein.

110.    Amazon owed NWM the duty of completing its obligations under the Contract with ordinary care.

111.    As alleged in the preceding paragraphs, Amazon breached its duty to NWM by undertaking and completing demolition work that greatly exceeded the scope of the "permitted actions" under the Agreement and doing so in such a manner as to leave the Property in a condition that threatens (a) additional damage to the Property, and (b) the health, safety and welfare of the occupants of the Property as alleged in paragraphs 60 and 61, *supra*, and in other ways.

112.    As a direct and proximate result of Amazon's misfeasance, as alleged in the preceding paragraphs, NWM has sustained damages which are currently believed to be approximately $10,000,000.

WHEREFORE, Plaintiff, New West Michigan III Industrial Investors, L.L.C., respectfully requests this Honorable Court will enter judgment in its favor against Defendant Amazon.com Services LLC in whatever amount in excess of $75,000.00 Plaintiff is entitled to receive, together with interest, costs, attorneys' fees and any other relief to which Plaintiff is equitably entitled.

## COUNT III – GROSS NEGLIGENCE

113.    NWM incorporates by reference the allegations contained in paragraphs 1 – 112 as if fully restated herein.

114.   Amazon owed NWM the duty of completing its obligations under the Contract with ordinary care so as to eliminate conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result to person or property.

115.   Amazon breached its duty to NWM as set forth in Paragraphs 60 - 61, and 88, *supra*.

116.   The misfeasance perpetrated on the Property by Amazon is willful and wanton conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

117.   Amazon's breach of its duties, as alleged herein, constitutes gross negligence.

118.   As a direct and proximate result of Amazon's breach of the Agreement, NWM has sustained damages which are currently believed to be approximately $10,000,000.

WHEREFORE, Plaintiff, New West Michigan III Industrial Investors, L.L.C., respectfully requests this Honorable Court will enter judgment in its favor against Defendant Amazon.com Services LLC in whatever amount in excess of $75,000.00 Plaintiff is entitled to receive, together with interest, costs, attorneys' fees and any other relief to which Plaintiff is equitably entitled.

### COUNT IV – COMMON LAW CONVERSION

119.   NWM incorporates by reference the allegations contained in paragraphs 1 – 118 as if fully restated herein.

120.   NWM maintains physical dominion and control over the Property.

121.   Unbeknownst to NWM, and acting under the auspices of the Agreement, Amazon's agents entered the Property for the purpose of commencing demolition of significant

portions of the building, as alleged in the foregoing paragraphs, to convert the Property for Amazon's intended use.

122.     During their presence on the Property, Amazon's agents conducted significant demolition activities, as alleged in the foregoing paragraphs, through which they removed, for Amazon's purposes, critical infrastructure, fixtures, and structural elements of the Property.

123.     The critical infrastructure, fixtures, and structural elements removed from the Property were the property of NWM.

124.     The acts described above constitute an unlawful exercise of dominion and control over NWM's property.

125.     The unlawful exercise of dominion and control over NWM's property by Defendant constitutes a conversion of NWM's property.

126.     As a direct and proximate result of Defendant's conversion of its property, NWM has sustained damages which are currently believed to be approximately $10,000,000.

WHEREFORE, Plaintiff, New West Michigan III Industrial Investors, L.L.C., respectfully requests this Honorable Court will enter judgment in its favor against Defendant Amazon.com Services LLC in whatever amount in excess of $75,000.00 Plaintiff is entitled to receive, together with interest, costs, attorneys' fees and any other relief to which Plaintiff is equitably entitled.

### COUNT V - STATUTORY CONVERSION (MCL 600.2919a)

127.     NWM incorporates by reference the allegations set forth in Paragraph 1 through 126 as if fully restated herein.

128.     NWM maintains physical dominion and control over the Property.

129.     Unbeknownst to NWM, and acting under the auspices of the Agreement, Amazon's agents entered the Property for the purpose of removing critical infrastructure, fixtures, and structural elements from the Property.

130.     Defendant's agents entered the Property for the purpose of commencing demolition of significant portions of the building, as alleged in the foregoing paragraphs, to convert the Property for Amazon's intended use.

131.     During their presence on the Property, Amazon's agents conducted significant demolition activities, as alleged in the foregoing paragraphs, through which they removed, for Amazon's purposes, critical infrastructure, fixtures, and structural elements of the Property.

132.     The acts described above constitute an unlawful exercise of dominion and control over NWM's property.

133.     The unlawful exercise of dominion and control over NWM's property by Defendant constitutes a conversion of NWM's property.

134.     As a direct and proximate result of Defendant's conversion of its property, NWM has sustained damages.

135.     Pursuant to MCL 600.2919a, NWM is entitled to treble damages for the value of the critical infrastructure, fixtures, and structural elements removed from the Property by Defendant, which amount is currently believed to be approximately $30,000,000.

136.     Pursuant to MCL 600.2919a, NWM is entitled to its reasonable attorneys' fees.

WHEREFORE, Plaintiff, New West Michigan III Industrial Investors, L.L.C., respectfully requests this Honorable Court will enter judgment in its favor against Defendant Amazon.com Services LLC in whatever amount in excess of $75,000.00 Plaintiff is entitled to

receive, together with interest, costs, attorneys' fees and any other relief to which Plaintiff is equitably entitled.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff

Dated: June 5, 2020                    By:_____ */s/ Mark E. Hills*_____
                                              Mark E. Hills (P47524)
                                              Bryan R. Walters (P58050)
                                       Business Address and Telephone:
                                              Bridgewater Place, P.O. Box 352
                                              Grand Rapids, MI 49501-0352
                                              (616) 336-6000
                                              mehills@varnumlaw.com
                                              brwalters@varnumlaw.com

## JURY DEMAND

Plaintiff, New West Michigan III Industrial Investors, L.L.C., by and through its attorneys, VARNUM LLP, hereby demands a trial by jury in this matter.

Respectfully submitted,

VARNUM LLP
Attorneys for Plaintiff

Dated:  June 5, 2020

By:____*/s/ Mark E. Hills*_____
      Mark E. Hills (P47524)
      Bryan R. Walters (P58050)
Business Address and Telephone:
      Bridgewater Place, P.O. Box 352
      Grand Rapids, MI 49501-0352
      (616) 336-6000
      mehills@varnumlaw.com
      brwalters@varnumlaw.com

16448283_4.docx